United States District Court
For the Northern District of California

**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE REGENTS OF THE UNIVERSITY
OF CALIFORNIA,

    Plaintiff,

    v.

MONSANTO COMPANY,

    Defendant.
_____/

No. C 04-0634 PJH

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT RE DOUBLE PATENTING**

Defendant Monsanto's motion for summary judgment came on for hearing on June 1, 2005 before this court. Monsanto appeared through its counsel Jonathan Quinn and plaintiff Regents of the University of California ("the Regents") appeared through its counsel Gerald Dodson. Having read all submitted papers and carefully considered the relevant legal authority, the court DENIES the motion.[1]

## BACKGROUND

The Regents have accused Monsanto of infringing U.S. Patent No. 6,692,941 ("the '941 patent"), which covers the DNA sequence for bovine growth hormone ("bGH"), and methods for artificially producing bGH. Monsanto argues that claims 1-10 of the '941 patent are invalid for double patenting, because the Regents previously obtained a patent in 1982 that covered recombinant DNA encoding all animal growth hormone (U.S. Patent No. 4,363,877, or "the '877 patent," at Maroulis Decl. Exh. I).

In March 1978, the inventor of the '877 patent conceived a method of using rat growth hormone to screen for growth hormone DNA. This method was expanded to cover all animals, and became claim 4 of the '877 patent. The '877 patent issued in 1982 and was set

---

[1] Pursuant to Civ. L.R. 7-13, this order may not be cited except as provided by Civ. L. R. 3-4(e).

to expire in December 1999.  In 1996, while engaged in litigation with Genentech, the Regents sought to have the patent reexamined.  In the reexamination, claim 4 was rejected in light of substantial prior art on animal growth hormone DNA, and the Regents ultimately cancelled it.

Claim 4 of the '877 patent teaches that growth hormone can be extracted from DNA found in the tissue of any mammalian pituitary gland.  The Regents stated in the specification that this encompassed growth hormone for any animal species, and covers:

> A recombinant plasmid vector comprising the nucleotide sequence coding for the growth hormone of an animal species and capable of transforming a microorganism, synthesized by a process comprising:
>
> isolating polyadenylated RNA from pituitary cells of the animal species;
> preparing double-stranded cDNA transcripts of the isolated RNA;
> fractionating the cDNA according to its molecular length, in order to produce a fraction enriched for cDNA coding for the growth hormone of the animal species;
> joining the cDNA coding for growth hormone covalently with a plasmid vector to produce a recombinant plasmid capable of transforming a microorganism.

This appears to describe the creation of a cDNA library for animal growth hormone in general.  See Claim Construction Order at 3 (explaining cDNA library).

Monsanto now contends that claim 4 of the '877 patent either anticipates or renders obvious claims 1-10 of the '941 patent, which encompasses the DNA sequence for bGH and other tools used to create bGH through recombinant DNA techniques.

## DISCUSSION

A.   Legal Standard

Summary judgment is appropriate when the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

B.   Double Patenting

The judicially-created doctrine of obviousness-type double patenting prohibits parties from in effect extending their patent exclusion rights by filing a later patent with claims that cannot be considered patentably distinct from claims previously asserted in a commonly-owned earlier patent.  Eli Lilly and Co. v. Barr Laboratories, Inc., 251 F.3d 955, 967 (Fed. Cir. 2001) (citation omitted).  In reviewing a double patenting claim:

> a court construes the claim in the earlier patent and the claim in the later patent and determines the differences. Second, the court determines whether the differences in subject matter between the two claims render them patentably distinct. A later claim that is not patentably distinct from an earlier claim in a commonly owned patent is invalid for obvious-type double patenting. A later patent claim is not patentably distinct from an earlier patent claim if the later claim is obvious over, or anticipated by, the earlier claim.

Id. at 968 (citations omitted). In assessing obviousness, only the claims are to be compared, and the court neither examines motivation to combine prior art references nor objective standards of non-obviousness as with obviousness inquiries under 35 U.S.C. § 103. Geneva Pharmaceuticals, Inc. v. Glaxosmithkline PLC, 349 F.3d 1373, 1378 (Fed. Cir. 2003).

Double patenting, as an invalidity defense, must be proved by the moving party by clear and convincing evidence, Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569, 1580 (Fed. Cir. 1991) ("a heavy and unshifting burden"), and is considered a question of law, In re Berg, 140 F.3d 1428, 1432 (Fed. Cir. 1998). Double patenting is considered a question of law because it relies solely on the terms of what has been claimed in the two patents at issue, like claim construction. Georgia-Pacific Corp. v. United States Gypsum Co., 195 F.3d 1322, 1326 (Fed. Cir. 1999). Thus, the court cannot rely on the earlier patent's specification as prior art in evaluating double patenting, though the specification may be used as in claim construction to evaluate the scope of the claims at issue. Geneva, 349 F.3d at 1385.

C.  Preliminary Matters

As an initial matter, the Regents contend that claim 4 of the '877 patent cannot be the subject of a double patenting claim, because that claim was cancelled in reexamination. The Regents argue that a claim that has been cancelled is deemed void ab initio and therefore the subject matter described in the claim should be treated as though it had never been the subject of a previous patent. Monsanto argues in response that the Federal Circuit has repeatedly held that disclaiming an earlier patent in light of a later one will not save the later patent from invalidity on double patenting grounds, because the purpose of the double patenting prohibition is to prevent a patent owner from gaining an unfair extension of time on a previously-patented invention, which is not prevented by a later attempt to disclaim the patent, after the inventor has already gained the benefit of patent protection from the earlier patent.

3

1  See Eli Lilly, 251 F.3d at 967 n. 5 ("A patent owner cannot avoid double patenting by
2  disclaiming the earlier patent."). The parties agree that the Federal Circuit has not reconciled
3  this apparent tension between these two doctrines.
4        This court agrees with Monsanto, and finds that, in light of the policy reasons against
5  double patenting articulated by the Federal Circuit, the subsequent cancellation of claim 4 of
6  the '877 patent is irrelevant to the question of whether the Regents have attempted to double
7  patent the invention described in claim 4, because the double-patenting doctrine is at base a
8  prohibition on any attempt to extend the life of claims beyond their normal termination date.
9  Thus, if the '941 patent does in fact duplicate claim 4 of the '877 patent, it follows that the '941
10 patent must also be cancelled because it cannot extend longer than the life of claim 4 of the
11 '877 patent. See Eli Lilly, 251 F.3d at 967-68.
12       The Regents also argue that claim 4 of the '877 patent does not anticipate the '941
13 patent because the '877 patent "dominates" the '941 patent. The doctrine of domination
14 concerns a situation where a broad claim, such as the '877 patent, appears to cover the entire
15 field (animal growth hormone) in which a more specific claim, such as claim 1 of the '941
16 patent (bovine growth hormone), has been made. See, e.g., In re Kaplan, 789 F.2d 1574,
17 1577-78 (Fed. Cir. 1986). Thus, a patent covering animal growth hormone generally does not
18 necessarily encompass a patent covering only bovine growth hormone, if the subject areas
19 covered remain patentably distinct. See, e.g., General Foods Corp. v. Studiengesellschaft
20 Kohle mBH, 972 F.2d 1272, 1278-79 (Fed. Cir. 1992) (senior patent's claims concerning
21 decaffination of raw coffee beans was dominated by junior patent's claims for the recovery of
22 caffeine from coffee in general, but because junior patent's invention covered the recovery of
23 caffeine, while the senior patent concerned decaffination, inventions were patentably distinct);
24 see also Kaplan, 789 F.2d at 1577-78 (senior patent governing chemical processes using
25 "solvent" dominated junior patent covering the same chemical process with a specifically-
26 named solvent, but because senior patent did not disclose what solvent to use, no double
27 patenting found and both patents remained valid).
28       Here, though, claim 4 of the '877 patent on its face specifically discloses the DNA

4

sequence, and a method for deriving it, for animal growth hormone in general, while claims 1-10 of the '941 patent disclose the DNA sequence for bGH, and a method for deriving it, in specific. This is thus not a situation where a broader patent and a narrower patent in the same area nonetheless cover separate inventions, but rather, a situation where both patents may potentially cover the same invention (namely, the DNA sequence for bovine growth hormone). Thus, the doctrine of domination does not preclude the possibility of double patenting here, and the court proceeds to compare claim 4 of the '877 patent with claims 1-10 of the '941 patent.

### D. Claim Construction of the '877 Patent

The parties do not discuss the proper construction of claim 4 of the '877 patent. While recognizing that the first step in applying double patenting principles is for the court to construe both the earlier and the later claims, and determine the differences (if any) between the two, neither party has set forth a formal construction of claim 4 or pointed to any disputed terms, phrases, or clauses. Instead, Monsanto suggests that the court simply adopt statements previously made by the Regents in the Genentech litigation, and the Regents proffer in support of their proposed construction extrinsic evidence in the form of expert declarations, without first establishing that it is necessary for the court to rely on such extrinsic evidence in construing claim 4 of the '877 patent.[2]

The court rejects both suggestions and in construing the claim, relies instead on the plain language of the claim and, where the language is unclear, the specification. Since neither party provided the prosecution history of claim 4 of the '877 patent, the court also presumes that it does not limit the scope of the claims.

Thus, based solely on the plain language of claim 4 of the '877 patent, the court

---

[2] The court agrees with both parties that extrinsic evidence may be used in the second step of the double patenting analysis to compare the claims at issue. However, in performing claim construction, the court ordinarily may not rely on extrinsic evidence unless the claim language, specification, and prosecution history fail to resolve ambiguities in the claim. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper.").

5

1 construes that claim as covering a composition of DNA molecules that codes for animal
2 growth hormone, and that is synthesized by the method set forth in the claim, through the
3 creation of a cDNA library.[3]

### E. Claim 1 of the '941 Patent

Claim 1 of the '941 patent covers: a composition of DNA molecules which consists of DNA molecules encoding bGH comprising the amino acid sequence: [sequence]." The court has construed this claim as covering all sequences of DNA molecules encoding for bGH.

The Regents concede that this claim on its face reads as though it covers bGH, since cows are a type of animal. However, the Regents argue that under Federal Circuit law, a claim purporting to cover a particular DNA strand by describing an amino acid sequence and methods for obtaining that protein sequence cannot receive patent protection until the specific DNA sequence itself has been isolated. See, e.g., Regents of the University of California v. Eli Lilly & Co., 119 F.3d 1559, 1567 (Fed. Cir. 1997), citing In re Deuel, 51 F.3d 1552, 1558 (Fed. Cir. 1995) and In re Bell, 991 F.2d 781, 784-85 (Fed. Cir. 1993) (claim for specific DNA molecule not obvious even in view of prior art disclosing amino acid sequence and a gene cloning method).[4]

The DNA sequence for bGH was not isolated until December 20, 1979, a year and a half after the Regents filed the '877 patent application. Kaplan Decl. Exh. E ¶¶ 3, 12. Therefore, claim 4 of the '877 patent could not as a matter of law cover the actual DNA sequence for bGH. Claim 1 of the '941 patent thus does not constitute double patenting in

---

[3] The Regents' argument that claim 4 of the '877 patent covers the method only is thus rejected, based on the plain language of the claim. See also, e.g., Regents' Request for Reexamination of '877 Patent (at Maroulis Reply Decl. Exh. G) at UCM025793 (describing claim 4 of the '877 as a "product by process" claim, meaning that both the product and the process are covered).

[4] Monsanto claims that the Regents are estopped from advancing this argument because the Regents had previously taken the position that claim 4 of the '877 patent in fact did cover bovine growth hormone. See, e.g., Maroulis Reply Decl. Exh. A (1993 letter from Regents to Eli Lilly). Given the rapid changes in the law concerning the patentability of DNA, the Regents are not bound by a statement which was subsequently found to be incorrect as a matter of law. Cf., e.g., Carnegie Mellon University v. Hoffman-La Roche Inc., 148 F.Supp.2d 1004, 1011-12 (no administrative deference given to PTO's determinations from 10 years prior, given the subsequent changes in DNA patent law).

light of claim 4 of the '877 patent.

F.  Claims 2-8 of the '941 Patent

1.  Claims at Issue

Claim 2 of the '941 patent covers:

a recombinant DNA molecule which comprises a segment encoding a protein in a condition substantially free of DNA encoding bovine pituitary protein other than bovine growth hormone, wherein said segment encodes a protein comprising the amino acid sequence [sequence].

Claims 3-8 of the '941 patent all depend from claim 2, so if claim 4 of the '877 patent does not encompass claim 2 for double patenting purposes, claims 3 through 8 will not be considered double patenting either.  The court has previously held that this claim is to be construed as covering a DNA molecule that "is nearly free or completely free of DNA encoding a bovine pituitary protein other than bovine growth hormone."  Claim Construction Order at 11.

2.  "Substantially Free Of" Additional DNA Proteins

The Regents concede that the method described in claim 4 of the '877 patent does yield bGH DNA for cows, but argues that they have produced evidence that the bGH DNA produced using the method of claim 4 of the '877 patent is mixed with other portions of DNA that do not code for bGH.  See Flavell Decl. ¶¶ 40-47 (claim 4 does not code for DNA molecules that are substantially free of DNA segments encoding for other proteins).  On its face, claim 2 of the '941 patent requires that the bGH DNA be "substantially free of DNA encoding bovine pituitary protein other than bovine growth hormone."  Thus, claim 4 of the '877 patent does not encompass claim 2 of the '941 patent.

Monsanto claims that the term "isolating polyadenylated RNA from pituitary cells of the animal species" in claim 4 of the '877 patent should be construed as removing DNA molecules that do not code for bovine growth hormone and thus producing "a protein in a condition substantially free of DNA encoding bovine pituitary protein other than bovine growth hormone."  However, the plain language of claim 4 of the '877 patent makes it clear that the process of isolating polyadenylated RNA (or mRNA) from the cells themselves comes before the mRNA is then translated into cDNA and thus before any DNA molecules that do not code

7

for bovine growth hormone can be removed.

In addition, Claim 4 of the '877 patent appears to describe a technique for isolating bovine growth hormone through the use of a cDNA library. See Claim Construction Order at 3 (describing cDNA libraries as created by isolating mRNA, translating the mRNA into cDNA, then splicing the cDNA into plasmids). The parties previously agreed that cDNA libraries are not covered by claim 2 of the '941 patent. Id. at 10-11. See also Flavell Decl. ¶¶ 40-47 (method described in claim 4 of the '877 patent does not yield a DNA strand free of other DNA segments coding for non-growth hormone proteins). In addition, because the court does not look at the specification in comparing the two claims, Monsanto's arguments that the specification indicates the existence of DNA segments encoding growth hormone that are free of other DNA segments is irrelevant.

Monsanto also does not provide any evidence showing that creating a DNA molecule free or almost free of other DNA segments coding for non-growth hormone proteins is obvious in light of the '877 patent.

Therefore, claim 2 of the '941 patent does not constitute double patenting of claim 4 of the '877 patent. Furthermore, since claim 2 of the '941 patent is patentably distinct from claim 4 of the '877 patent, claims 3-8 of the '941 patent are patentably distinct from claim 4 of the '877 patent.

G.     Claims 9 and 10

Claim 9 of the '941 patent covers "a microorganism that contains bovine growth hormone, which hormone has the amino acid sequence [sequence]." Claim 10 of the '941 patent depends from claim 9. The court has previously construed this claim as requiring "a microscopic, unicellular form of life, specifically, bacteria," that contains bovine growth hormone with the applicable amino acid sequence. Claim Construction Order at 12.

On its face, claim 4 of the '877 patent does not cover microorganisms. Claim 9 of the '941 patent is thus patentably distinct from claim 4 of the '877 patent and thus does not constitute double patenting. And because claim 10 of the '941 patent depends from claim 9, claim 10 does not constitute double patenting either.

Monsanto's motion for summary judgment for double patenting is DENIED. This order fully adjudicates the matter listed at nos. 144 and 173 on the clerk's docket for this case.

**IT IS SO ORDERED.**

Dated:  June 27, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge