IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>       Plaintiff,<br><br>   v.<br><br>MONSANTO COMPANY,<br><br>       Defendant.<br>_____/ | No. C-04-0634 PJH (EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS** |

## I.   INTRODUCTION

Plaintiff UC Regents is the owner of U.S. Patent No. 6,692,941 ("the '941 Patent"), which claims DNA encoding bovine growth hormone ("bGH"), genetically altered microorganisms containing such DNA and methods of using recombinant DNA technology to make bGH. Plaintiff alleges that the materials and methods used to produce the active ingredient in Defendant Monsanto Company's POSILAC™ ("Posilac"), a bGH product, are covered by the claims of the '941 Patent. Plaintiff further alleges that Defendant was aware years prior to issuance of the patent in suit, when the PTO allowed *identical* claims in another of Plaintiff's patent applications, and that Monsanto willfully infringed the '941 Patent by continuing to market Posilac after the '941 Patent issued on February 17, 2004.

Defendant counters that it did not infringe the '941 Patent, much less do so willfully, and that the patent is invalid. To refute the willful infringement allegations, Defendant elected to rely on the advice of counsel defense and produced two letters from outside counsel hired solely as Opinion

1  Counsel (the "Opinion Letters"). The Opinion Letters were obtained in June and August of 2004,
2  several months after the filing of the lawsuit, and address the scope, validity and infringement of the
3  '941 Patent.

4  Although Defendant recognized that its election to rely on these Opinion Letters waived the
5  attorney-client privilege that otherwise would have shielded certain documents from discovery, it
6  construed the waiver narrowly as applying only to post-issuance documents and communications
7  and to the subject of the patent in suit rather than to Plaintiff's earlier identical claims. Unsatisfied
8  with Defendant's production, Plaintiff argued that the waiver was broader. When the parties were
9  unable to resolve their dispute, Plaintiff filed a motion to compel Defendant to produce additional
10 documents and deposition testimony.

11 The Court held a hearing on July 12, 2005, at which it orally granted Plaintiff's Motion to
12 Compel in part, as set forth herein. The Court agreed to stay its ruling until July 14, 2005, pending
13 Defendant's determination of whether to appeal the ruling.

14 **II.    DISCUSSION**
15     **A.    Standards.**

16 In an action for patent infringement, where a party is accused of acting willfully, and where
17 that party asserts an advice of counsel defense, a party waives "the attorney-client privilege as to
18 communications and documents relating to the advice." Handgards, Inc. v. Johnson & Johnson, 413
19 F. Supp. 926, 929 (N.D. Cal. 1976). "A party cannot disclose only those facts beneficial to its case
20 and refuse to disclose, on the grounds of privilege, related facts adverse to its position." Ortho
21 Pharm. Corp. v. Smith, 959 F.2d 936, 944 (Fed. Cir. 1992) (citation omitted). Accordingly, fairness
22 may dictate waiver of the attorney client-privilege to prevent its use as both a sword and a shield.
23 Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992). The waiver, however, is only
24 as broad as necessary to assure fair disclosure on the subject matter of the advice. Thus, when a
25 party relies on an opinion letter to defend against willfulness allegations, the scope of the waiver is
26 the subject matter of the opinion. Electro Scientific Indus. v. General Scanning, Inc., 175 F.R.D.
27 539, 544 (N.D. Cal. 1997).
28

Sharper Image Corp. v. Honeywell Int'l, Inc., 222 F.R.D. 621 (N.D. Cal. 2004), addressed the scope of the waiver doctrine in willful infringement cases. Noting that there are no significant barriers to alleging willfulness and that the assertion of willful infringement imposes enormous pressure on defendants to disclose the advice of counsel, Judge Brazil cautioned that the waiver of the attorney client privilege is less than fully voluntary and the scope of the waiver must therefore be only as broad as is necessary to insure fairness. Although the Federal Circuit thereafter overruled the negative inference drawn if a defendant failed to secure an opinion about the patent at issue in the suit (Knorr-Bremse Systeme Fuer Nutzfahrzeugue GmbH v. Dana Corp., 383 F.3d 1337, 1344 (Fed. Cir. 2004)), making the election somewhat more voluntary, the underlying fairness concerns articulated in Sharper Image largely still apply.

**B.     Under the circumstances of this case, pre-issuance conduct is relevant.**

Contrary to Defendant's argument, the fact that infringement can only occur after the issuance of the patent in suit does not render all documents predating the issuance irrelevant. See Conopco, Inc. v. Warner-Lambert Co., No. 99-101, 1999 WL 1565082, *6 (D. N.J. Jan. 24, 2000) ("The Court concludes, however, that pre-issuance (pre-February 11, 1997) information may be relevant or may lead to the discovery of information relevant to infringement and should be produced"); Minnesota Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 796 F.2d 1559, 1581-2 (Fed. Cir. 1992) (affirming special master's decision to consider pre-issuance conduct as one factor in making a willfulness finding: "Such considerations are completely proper. When determining whether infringing conduct warrants a finding of willfulness the court must examine the totality of the circumstances of the case"); National Presto Indus., Inc. v. The West Bend Co., 76 F.3d 1185, 1195 (Fed. Cir. 1996) ("'[I]f the plaintiff could prove that defendants knew that a patent would issue and that its claims would cover defendants' products, then there is no reason why a defendant could or should escape liability for inducement of infringement'") (quoting Procter & Gamble Co. v. Nabisco Brands, Inc., 604 F. Supp. 1485, 1490 (D. Del. 1985)).

During the hearing, Defendant confirmed that the claims in Plaintiff's other patent application were *identical* to those in the '941 Patent which eventually issued. There is no dispute

that Defendant had knowledge of this earlier application and that Defendant analyzed these claims.[1] Documents created by Defendant or its attorneys before February 17, 2004, relating to the scope, validity or infringement of the claims in what has become the '941 Patent therefore would be relevant in this case.  Indeed, they would be part of the "totality of the circumstances" that the trier of fact will have to consider when assessing Defendant's alleged willfulness and its reasonableness in relying on the Opinion Letters.  See Ortho Pharm. Corp., 944 F.2d at 944 (explaining that whether an infringement is "willful" is a question of the infringer's intent and that the advice of counsel defense depends upon whether counsel's opinion was thorough enough, "as combined with other factors," to "instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable").  What Defendant learned or understood about the claims of what eventually became the '941 Patent before it issued would, or should, have shaped Defendant's decision to rely on the Opinion Letters and would be relevant to Defendant's reasonableness in doing so.  Accordingly, the Court grants Plaintiff's Motion to Compel all communications and documents predating February 17, 2004 (the date the patent issued and Plaintiff filed its complaint), to the extent that they relate to the scope, validity or infringement of the claims in what eventually became the '941 Patent.

**C.   The scope of waiver applies differently to different Monsanto attorneys.**

Sharper Image articulated two sets of concerns relevant to discovery demands for otherwise-protected documents: temporal concerns and concerns pertaining to the identity and roles played by different law firms.  222 F.R.D. at 640.  Applying this analysis, the Court considered when the communications sought to be discovered occurred (or when the documents were generated) in relation to notice of the relevant patents, when the defendant made the decision to market the accused product, and when litigation commenced.  Id.  The Court also considered which lawyers had what dealings with Defendant in relation to the products and patents in suit.

---

[1] Defendant apparently designated some of this information as highly confidential.  At the hearing, however, Defendant did not seek to keep the same information confidential, but presented it in open court on the public record.  Thus, it waived any confidentiality.  Nor can the Court see any valid basis for such designation.  The Court cautions the parties not to over-designate, contrary to Civil Local Rule 79-5.

4

### 1. Opinion Counsel

While Defendant conceded that the privilege had been waived as to any documents to or from, or communications with, its Opinion Counsel, it argued that any pre-issuance conduct was irrelevant since patent infringement and willfulness could only occur after a patent issued. As noted above, any documents that relate to the scope, validity or infringement of the claims in the '941 Patent as it ultimately issued are relevant, regardless of whether they were created or transmitted before or after the issuance of the '941 Patent. Defendant should supplement its production with such documents if they exist and update its Patent Local Rule 3-8 privilege log as necessary.

### 2. Current Litigation Counsel

Plaintiff concedes that the waiver does not extend to communications with or documents created by Defendant's trial counsel, Quinn Emanuel Urquhart Oliver & Hedges, except those with, for or by Opinion Counsel. Therefore, unless the documents were shared between Quinn Emanuel and Opinion Counsel, Defendant need not provide any Quinn Emanuel documents, nor can Plaintiff elicit testimony about communications between Defendant and Quinn Emanuel unless it pertains to communications with Opinion Counsel.

### 3. Former Litigation Counsel

Howrey Simon Arnold and White wore two hats in its relationship with Defendant. In its role as patent counsel, Howrey & Simon advised Defendant well before the issuance of the '941 Patent and the ensuing litigation. For example, for several years prior to issuance, Howrey & Simon advised Defendant on issues pertaining to Plaintiff's claims, which eventually became the claims of the '941 Patent. Furthermore, Defendant reserved the right to introduce evidence of the design-around research as part of its defense, in which its scientists were guided by the advice of Monsanto outside attorneys (including not only Howrey & Simon but also Fitzpatrick, Cella, Harper & Scinto). While Defendant argued that it would rely on the scientists for its design-around defense rather than on its attorneys who advised them, that attempted distinction is unfair to Plaintiff and unworkable.

If Howrey & Simon had played no other role, the waiver as to that firm would be broad. But it did: once Plaintiff filed suit and for almost one year thereafter, Howrey & Simon acted as Defendant's litigation counsel. In that capacity, Howrey & Simon shaped trial strategy and made

litigation decisions. Based on Howrey & Simon's litigation role, Defendant has taken the position that communications with that firm's attorneys – like communications with its current trial counsel – are beyond the scope of the waiver. Accepting that argument would allow Defendant to take advantage of the advice of counsel defense while preventing Plaintiff from exploring potentially contradictory evidence. Ignoring that argument would allow Plaintiff to gain insight into Defendant's litigation strategy.

In order to balance these competing concerns, the Court therefore grants Plaintiff's Motion to Compel with regard to communications with and documents to or from Howrey & Simon about the scope, validity and infringement of the claims in what became the '941 Patent, but only to the extent that such communications and documents predate the filing of the lawsuit or include Opinion Counsel. As to any other attorneys, including attorneys at Fitzpatrick, Cella, Harper & Scinto, who have advised Defendant about the scope, validity or infringement of the claims in the '941 Patent but have never served as litigation counsel for Defendant, the Court grants Plaintiff's Motion to Compel all documents and communications on these subjects, without any limitation as to time.

    4. <u>In-house counsel</u>

Defendant's in-house attorneys, particularly George Beck and Gary Bond, played multi-faceted roles. Mr. Beck apparently not only worked with Monsanto scientists, executives and outside counsel on the "design-around" efforts, but he also participated in related licensing negotiations. Mr. Bond continued Mr. Beck's design-around work and, once Plaintiff filed suit, managed the litigation. In the course of their design-around efforts and of Mr. Beck's negotiations, these in-house counsel necessarily analyzed the scope, validity and infringement of the claims of the '941 Patent. These analyses are relevant to Defendant's reasonableness in relying on the Opinion Letters, which conclude that a number of Plaintiff's claims are not valid and that Defendant's activities do not infringe on the '941 Patent. Once again, it would be unfair to allow Defendant to use the Opinion Letters as a shield without allowing Plaintiff access to documents or communications that might present a different or contrary conclusion. See <u>Sharper Image</u>, 222 F.R.D. at 641.

But it also would be unfair to allow Plaintiff to delve into Defendant's litigation strategy. As

1   Mr. Beck left Defendant's employ before the lawsuit was filed, the concern about revealing
2   litigation strategy is reduced as to him.  Defendant's concern that his successor necessarily will have
3   difficulty separating pre- and post-complaint thoughts is valid.  However, Defendant is a
4   sophisticated party who should have known through its attorneys of the implications of asking Mr.
5   Bond to become enmeshed in this litigation after previously advising Defendant on Plaintiff's
6   claims.  Defendant chose to place its in-house counsel in this role and cannot shield his opinions
7   from discovery by so doing. As with litigation counsel, however, the communications and
8   documents of Defendant in-house counsel after Plaintiff filed suit are afforded a greater degree of
9   protection given the importance of shielding litigation decisions and strategy from the opposing
10  party.

11      The Court therefore grants Plaintiff's Motion to Compel with respect to documents and
12  communications with in-house counsel which relate to the scope, validity or infringement of the
13  '941 Patent to the extent that they:  (1) precede the filing of the lawsuit; (2) involve Opinion
14  Counsel; (3) concern communications between in-house counsel and Monsanto management about
15  the Opinion Letters; or (4) concern in-house counsel's opinions about the subjects of the Opinion
16  Letters.

17      **D.    Plaintiff's Motion to Compel documents listed on Defendant's Privilege Logs.**
18      Plaintiff also asks the Court to order Defendant to produce all documents listed on its
19  privilege logs and to sanction Defendant for failing to comply with Patent Local Rule 3-8.
20  Defendant's log applied its unduly narrow interpretation of the waiver, and therefore is inadequate.
21  The Court cannot determine from it what documents are subject to waiver.  The Court therefore
22  orders Defendant to produce a privilege log that complies with Patent Local Rule 3-8 and this ruling.
23  Plaintiff's request for issue preclusion sanctions is denied.

24  **III.  CONCLUSION**
25      Plaintiff's Motion to Compel is GRANTED in part and DENIED in part.
26  **IT IS SO ORDERED.**
27  Dated: July 14, 2005
                                                            _____
28                                                          ELIZABETH D. LAPORTE
                                                            United States Magistrate Judge

7